IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


R.S.,[1]

                    Plaintiff,

vs.                                         Case No. 20-2416-SAC

ANDREW SAUL,
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

                    Defendant.


**MEMORANDUM AND ORDER**

On November 5, 2012, plaintiff filed an application for social security disability insurance benefits and on or around July 10, 2013 plaintiff filed an application for supplemental security income benefits. The applications alleged a disability onset date of September 5, 2012. The applications were denied initially after an administrative hearing, but remanded for additional proceedings by the Appeals Council. Another administrative hearing was conducted on December 7, 2016. Again, plaintiff's applications were denied. This decision was not overturned by the Appeals Council, but plaintiff appealed to this court and the parties agreed that the matter should be remanded for another administrative review. A telephone hearing was conducted on April 22, 2020 and the ALJ issued a decision on May 4, 2020 which denied

---

[1] The initials are used to protect privacy interests.

plaintiff's applications for benefits.  This decision has been adopted by defendant.  This case is now before the court upon plaintiff's request to reverse and remand the decision to deny plaintiff's applications for benefits.

I.  Standards of review

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program.  See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131.  To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

For supplemental security income claims, a claimant becomes eligible in the first month where he or she is both disabled and has an application on file.  20 C.F.R. §§ 416.202-03, 416.330, 416.335.

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards.  See Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  "Substantial evidence" is "'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). This standard is "not high," but it is "'more than a mere scintilla.'" Id., (quoting Consolidated Edison, 305 U.S. at 229). It does not require a preponderance of the evidence. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994).

The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)). The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. Lax, 489 F.3d at 1084 (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)). The court reviews "only the sufficiency of the evidence, not its weight." Oldham v. Astrue, 509 F.3d 1254, 1257 (10th Cir. 2007).

II. <u>The ALJ's decision</u> (Tr. 1167-1187).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision. (Tr. 1169-1170). First, it is determined whether the claimant is engaging in substantial gainful activity. Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe." At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work. Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work. <u>Blea v. Barnhart</u>, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that there are jobs in the economy with the claimant's residual functional capacity. <u>Id.</u> In this case, the ALJ decided that the evidence did not show that plaintiff was under disability from the alleged

onset date through the date of decision.  More specifically, the ALJ decided that plaintiff was capable of returning to his past relevant work as an order filler and that he could also perform other jobs that exist in the national economy.

The ALJ made the following specific findings in his decision. First, plaintiff last met the insured status requirements for Social Security benefits on December 31, 2017.  Second, plaintiff has not engaged in substantial gainful activity since September 5, 2012.  Third, plaintiff has the following severe impairments: degenerative disc disease; right knee arthritis and meniscal tear; and depression.  Fourth, plaintiff does not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Fifth, plaintiff has the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. § 416.967(c) except that: plaintiff can frequently climb ramps, stairs ladders, ropes and scaffolds; he can frequently balance on level surfaces; he can frequently stoop, kneel, crouch and crawl; he can occasionally tolerate exposure to vibration, but never tolerate exposure to unprotected moving mechanical parts and unprotected heights; plaintiff can do no commercial driving; he is able to understand, carry out and remember simple, routine, repetitive tasks involving only simple, work-related decisions with few, if any, work place changes; he can do no fast-moving assembly line-type work; he can

have no interaction with the public; he can tolerate occasionally interaction with supervisors; he can be around coworkers throughout the day, but with only brief, incidental interaction with coworkers and no tandem job tasks requiring cooperation with coworkers to complete the task. Finally, the ALJ determined that, plaintiff could perform his past relevant work as an order filler as well such medium unskilled jobs as a night cleaner, laundry worker I and garment marker.

III. Physical impairments

Plaintiff's first argument to reverse the denial of benefits is that the RFC as to plaintiff's physical impairments is unsupported by substantial evidence. The focus of this argument is upon plaintiff's right knee ailment and the ALJ's consideration of the reports of Dr. Kyle Timmerman and Dr. Bradley Schuessler.

The record shows that plaintiff has a right knee meniscus tear and right knee surgery to repair a ligament in 1987.[2] X-rays show mild to moderate degenerative changes in plaintiff's knees in May 2012. (Tr. 586, minimal changes to left knee); (Tr. 587, mild degenerative changes to right knee). An MRI conducted on September 24, 2015 showed a meniscus tear in plaintiff's right knee with small joint effusion and probably small bone marrow edema in the tibia. (Tr. 880).

---

[2] Medical records indicate that plaintiff also has had a left meniscus tear. But, plaintiff's reply brief states that plaintiff's right knee has the "severe" impairment at issue. Doc. No. 16, p. 3.

The ALJ's decision remarked that plaintiff's self-care did not suggest that his knee issues were more limiting than the RFC. The ALJ noted that plaintiff did not wear a knee brace to his visits to medical providers or to his consultative physical examination.  (Tr. 1176).  He also noted that plaintiff's primary care provider "conservatively prescribed Lortab" in early 2012 for plaintiff's pain.  The ALJ further related that in a March 2014 medical visit, plaintiff reported to a nurse that his primary reason for his visit was to request a cane for his right knee pain and that his primary goal and mission was to get his Social Security disability straightened out.  (Tr. 1177).  The ALJ also commented that plaintiff had not consistently stated his symptoms or persisted with treatment.  (Tr. 1178).  According to the ALJ, plaintiff:  has refused physical therapy (Tr. 1178); has been prescribed pain medication sporadically (Tr. 1178-79); has not used a cane during doctor's visits[3] (Tr. 1173 and 1179); has not sought treatment consistently (Tr. 1179); and exhibited a normal gait during a January 5, 2019 evaluation by Dr. Schuessler.  (Tr. 1179).

The ALJ gave "great weight" to the state agency consultative opinion from Dr. Timmerman in April 2013 and the RFC is consistent with Dr. Timmerman's findings.  (Tr. 1179).  The ALJ remarked that

---

[3] Dr. Schuessler commented that plaintiff did not need a cane.  (Tr. 1482).

Dr. Timmerman's opinion was well-supported by objective examinations, the minimal imaging findings, and the absence of orthopedic care. (Tr. 1179).

The ALJ gave "little weight" to the 2019 opinion rendered by Dr. Schuessler after a consultative examination. (Tr. 1179). Dr. Schuessler's findings as to plaintiff's capacity to lift and carry were the same as those in the RFC. He found, however, that plaintiff could stand for only one hour a day, walk for one hour a day, and sit for four hours out of a total of eight hours in a workday. Also, he found that plaintiff should never or only occasionally climb stairs or ladders, balance, stoop, kneel, crouch or crawl. (Tr. 1488). The ALJ determined that these findings were not supported by any recent imaging or need for imaging. He also discounted Dr. Schuessler's findings because, in the doctor's examination, plaintiff showed only some loss of range of motion in his right knee and plaintiff had no muscle atrophy, swelling, or joint deformity, and could bend and squat without difficulty. (Tr. 1482-83). The ALJ also considered Dr. Schuessler's findings inconsistent with treatment records.[4]

Plaintiff contends that the ALJ should have given Dr. Schuessler's opinion great weight and Dr. Timmerman's opinion little weight. Plaintiff asserts that Dr. Schuessler's opinion

---

[4] The opinion says "consistent with treatment records" but the context of the opinion convinces the court that the ALJ meant "inconsistent." (Tr. 1179)

should carry more weight because it is more recent and because Dr. Schuessler made a physical examination prior to giving his opinion.

When evaluating the opinion of any medical source, an ALJ must consider:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

See 20 C.F.R. §§ 404.1527(c), 416.927(c).[5]  An opinion of an examining medical source is presumptively entitled to more weight than a doctor's opinion derived from a review of the medical record, but it "may be dismissed or discounted . . . based on an evaluation of all the factors set out" in the regulations. Chapo v. Astrue, 682 F.3d 1285, 1291 (10th Cir. 2012).   In Jones v. Berryhill, 720 Fed.Appx. 457, 460 (10th Cir. 2017), the court affirmed a denial of benefits even though the ALJ relied upon the opinion of a non-examining state agency consultant over the opinions of three doctors who had examined the claimant and another doctor who relied upon the opinions of the three examining doctors. The court held that "[t]he ALJ was only required to give 'good

---

[5] These are the regulations regarding the evaluation of medical source opinions for claims filed before March 27, 2017.

reasons' for the relative weight she gave to the five physicians and that the claimant had not shown that "the ALJ's reasons weren't 'good.'"  Id.  In Deherrera v. Commissioner, SSA, 2021 WL 942778 *2 (10th Cir. 2021), the Tenth Circuit declined to credit the opinion of an examining doctor over two nonexamining consultative physicians because the doctor's opinion regarding manipulative limitations was contrary to clinical exam findings.  In Trujillo v. Commissioner, SSA, 818 Fed.Appx. 835, 840 (10th Cir. 2020), the court rejected a challenge to a denial of benefits where the ALJ relied upon two state agency non-examining physicians' medical opinions issued two years before the ALJ's decision.  The ALJ concluded that later treatment records did not materially differ from the medical evidence predating the state agency physicians' opinions and that the claimant failed to develop any argument that the opinions were "overwhelmingly contradicted" by more recent evidence.  Id. at 840-41.  The court found it significant that the ALJ did not ignore later evidence, reviewed the claimant's medical records, and found that the opinions were consistent with the medical evidence as a whole.

Here, plaintiff argues that the ALJ did not have good reasons for the relative weight he gave to Dr. Timmerman's report because Dr. Timmerman did not consider plaintiff's torn right meniscus and his opinion was given in 2013.  It seems obvious that the ALJ considered these factors in part because the ALJ listed plaintiff

as having the severe impairments of right knee arthritis and meniscus tear. The ALJ decided that Dr. Timmerman's opinion deserved significantly greater weight because, in the ALJ's opinion, it was supported by objective exams, minimal imaging findings, and the absence of orthopedic care. These are factors the ALJ referred to in his analysis of Dr. Timmerman's and Dr. Schuessler's reports. (Tr. 1179).

The ALJ noted that plaintiff sought care intermittently and went long periods of time without seeing a doctor. (Tr. 1179). He did not seek medical care for his knees other than prescription drugs and he was able to do without those for lengthy periods. (Tr. 1179). His examinations produced largely normal results. Dr. Schuessler in 2019 noted mostly normal ranges of motion and that plaintiff ambulated without assistance.[6] (Tr. 1482, 1484). He also reported plaintiff could bend and squat without difficulty even though he opined that plaintiff should never crouch. (Tr. 1482, 1488). Dr. Vandu Nagpal make grossly normal findings in 2017, although he noted that plaintiff used a cane and he prescribed medication for plaintiff's knee pain. (Tr. 1460). Range of motion findings were normal and no swelling was detected during an examination in 2015. (Tr. 1469). Medication and

---

[6] Reports of plaintiff's complaints and gait have varied. See, e.g., Tr. 787 – normal gait and stance – 3/20/2014; Tr. 1469 – ambulating without difficulty without aides – 10/31/2016; Tr. 1088 – normal gait – 3/4/2014; Tr. 1091 & 1093 – antalgic gait – 3/4/2014; Tr. 1008-1009 – antalgic gait, uses a cane – 4/21/15; Tr. 987 – pain medication working fine for knee pain – 9/3/2015.

physical therapy were considered for plaintiff's right meniscus tear. (Tr. 1470). The ALJ noted, however, that plaintiff did not pursue physical therapy or an orthopedic consultation. See Tr. 1178-1179. In general, the ALJ observed that plaintiff "has not consistently stated his symptoms or persisted with treatment." (Tr. 1178); see also (Tr. 1185)(characterizing the record as having "profound inconsistencies"). This included plaintiff's use of a cane, knee brace and medication.

Upon review, the evidence pointed to by plaintiff does not overwhelmingly contradict the record and findings cited by the ALJ. The court finds that the ALJ evaluated the opinions of Drs. Timmerman and Schuessler incorporating in his discussion some of the factors which the regulations require for consideration, such as support by relevant evidence and consistency with the record as a whole. Although Dr. Schuessler's opinion is presumptively entitled to more weight than Dr. Timmerman's opinion, the court finds that the ALJ's evaluation is supported by substantial evidence and that to hold otherwise would engage in an improper reweighing of the evidence.

The court further finds that the ALJ fulfilled his responsibility to develop the record by obtaining pertinent medical information. See Duncan v. Colvin, 608 Fed.Appx. 566, 570-72 (10th Cir. 2015)(no further testing required where there is sufficient evidence upon which to assess the claimant's RFC);

Grogan v. Barnhart, 399 F.3d 1257, 1263-64 (10th Cir. 2005)(ALJ's
duty is to develop an adequate record consistent with the issues
raised).  Also, the ALJ considered reasons why plaintiff may have
failed to obtain or follow through with treatment, noting that
plaintiff obtained medical care from the VA without insurance and
had resources which could help cover transportation expenses or
provide transportation.  (Tr. 1184).

IV. Mental limitations

     Plaintiff argues that the RFC as to plaintiff's mental
functioning is unsupported by substantial evidence.  Plaintiff
supports this argument by attacking the weight the ALJ attached to
the opinions of various doctors.

     The ALJ started his discussion of plaintiff's mental health
by reviewing plaintiff's psychological complaints during two
visits with Dr. Fermin Santos at the VA in 2012 and one visit with
Dr. Neelofar Khan in 2014.  (Tr. 1180).  The ALJ noted that
plaintiff was prescribed medication which he did not renew and in
2014 plaintiff began group therapy but did not follow up with it.
(Tr. 1180).  In August 2014 plaintiff completed a form indicating
that he had no mental health concerns at the time.  (Tr. 1181).

     The ALJ gave the opinion of a state agency consultant, Dr.
R.E. Schulman, "great weight."  (Tr. 1181).  This assessment from
April 2013 indicated that plaintiff was moderately limited in his
ability to maintain attention, concentrate, and understand and

carry out detailed instructions. (Tr. 150, 166). Dr. Schulman also found that plaintiff had a limited ability to engage in social interactions with the public. (Tr. 150, 166).

Plaintiff objects to the ALJ's evaluation of Dr. Schulman's opinions for several reasons. First, he contends that Dr. Schulman's report does not merit substantial weight because he did not examine plaintiff and his report was done seven years before the ALJ's decision. In this order, however, the court has cited cases (Jones, Deherrera, and Trujillo) in which non-examining state agency doctors' opinions were considered substantial evidence. In addition, plaintiff does not cite circumstances or diagnoses that have changed in the seven-year period or which would lead one to consider Dr. Schulman's opinion to be stale. Obviously, a later opinion from Dr. Tammy Sheehan was not reviewed by Dr. Schulman, but the ALJ considered this opinion and explained why he believed it was not consistent with the medical record. (Tr. 1182).

Plaintiff also contends that the ALJ failed to adopt the whole of Dr. Schulman's opinion, particularly that plaintiff was moderately limited in the ability to understand, remember and carry out detailed instructions. The court disagrees. The ALJ limited plaintiff to understanding, carrying out, and remembering simple routine repetitive tasks involving only simple work-related

14

decisions with few, if any workplace changes.[7] (Tr. 1175, 1216). Simple, routine, and repetitive tasks are sufficiently correlated with simple instructions that the court finds the ALJ's findings are consistent with Dr. Schulman's findings.

Plaintiff goes on to assert that the RFC is not supported by substantial evidence because the ALJ did not properly give weight to the opinion of a non-examining state agency consultant, Dr. Mark Altomari. The court rejects this argument. The ALJ observed that the reports of Dr. Schulman and Dr. Altomari were "very similar." (Tr. 1181). Dr. Schulman's report was given great weight "because it better elucidate[d] [plaintiff's] social limitations than . . . the opinion" of Dr. Altomari. (Tr. 1181). Dr. Schulman's report noted that plaintiff "may have some difficulty in certain social settings and may have difficulty interacting with the public." (Tr. 151). The court has reviewed the reports of Dr. Schulman and Dr. Altomari. As the ALJ commented, the reports are very similar. Each report largely, but not entirely, supports the RFC findings. Plaintiff has not demonstrated how the reports or the ALJ's consideration of them support plaintiff's claim that the ALJ made a mistake requiring remand.

---

[7] The ALJ placed more extensive restrictions upon plaintiff's capacity to interact with supervisors, co-workers and the public than those noted in Dr. Schulman's report. To this degree, the ALJ did not incorporate the entirety of Dr. Schulman's findings in the RFC, but this was favorable to plaintiff's position in this case.

Next, plaintiff argues that the ALJ improperly rejected the opinion of Dr. Tammy Sheehan.  Dr. Sheehan met with plaintiff once and performed a consultative examination.  She found that plaintiff suffered from major depressive disorder and "appeared to be struggling" with PTSD.  (Tr. 1496).  She rated plaintiff with: moderate limitations in his ability to interact with the public, supervisors and co-workers; and a marked limitation in the ability to respond appropriately to usual work situations and change in a routine work setting.  (Tr. 1498).  She found:  no limitations in plaintiff's ability to understand and remember simple instructions; a mild limitation in his ability to carry out simple instructions; and moderate limitations in the ability to make simple work-related decisions and understand, remember and carry out complex instructions.  (Tr. 1497).  Dr. Sheehan determined that although plaintiff was not cognitively impaired, he was not always able to think rationally "because of his dysregulated affect and somewhat disorganized thought processes."  (Tr. 1497).

The ALJ give Dr. Sheehan's opinion "little weight" because it was "based on a one-time exam from a non-treating source, and the [plaintiff's] mental status is observed to be normal during his VA visits, with no mental health treatment since 2014."  (Tr. 1182).  Plaintiff argues that Dr. Sheehan's opinion deserves more weight than the consulting state agency sources who did not examine plaintiff once.  As the court has already noted, however, ALJs are

16

not required to confer superior standing to examining doctors' opinions if the ALJ finds that the opinions are not consistent with the medical record. Here, the ALJ determined that Dr. Sheehan's opinion was not consistent with the absence of mental health treatment in the record since 2014 and the readings of plaintiff's mental condition during his VA visits.[8]  (Tr. 1182).

Plaintiff does not dispute that plaintiff's mental condition was often observed to be largely normal during many medical VA visits.  Plaintiff, however, does dispute whether plaintiff received mental health treatment since 2014.  The record indicates this treatment was minimal.  Plaintiff requested psychotropic medications from the VA and was referred to Dr. Daryl Richey for a telephone evaluation.  The 15-minute evaluation was conducted on February 24, 2017.  (Tr. 26, 1453).  Plaintiff sounded irritable with rapid speech and said he was "bipolar." (Tr. 1454).  He told Dr. Richey that he was not interested in an evaluation or a referral. (Tr. 28, 1455).  Dr. Richey diagnosed plaintiff with an unspecified mood disorder.  (Tr. 1455).  On March 8, 2017, Dr. Richey again telephoned plaintiff.  Plaintiff was well-oriented and receptive, with slightly pressured and circumstantial speech. (Tr. 23).  His affect was anxious or bipolar.  (Tr. 23).  Plaintiff

---

[8] E.g., Tr. 641 – alert, cooperative – 7/24/2012; Tr. 787 – alert, cooperative, normal attention span and concentration - 3/20/2014; Tr. 40 – denies depression, mood is good - 11/4/2016;  Tr. 1460 – pleasant, alert, cooperative – 2/16/2017; Tr. 1482 – alert, cooperative, does not appear depressed or anxious – 1/5/2019.

declined a psychiatric consult for reevaluation and prescription. (Tr. 23). Before these telephone contacts, plaintiff's previous psychiatric visit was in March 2014 where he was prescribed the medications he was seeking. (Tr. 27, 1454). Followup visits in 2014 were cancelled and not rescheduled. (Tr. 27, 1454).

In sum, upon review of the record, the court finds that the ALJ gave good grounds for his evaluation of the mental health professionals who evaluated plaintiff. The court further finds that substantial evidence supports the mental functional capacity findings that are included in the RFC.

## V. Step four determination

Plaintiff next argues that limiting plaintiff to simple, routine and repetitive tasks involving only simple, work-related decisions is inconsistent the reasoning level-two jobs which vocational expert testified plaintiff could perform. The jobs which the vocational expert testified plaintiff could perform required level-two reasoning according to the Dictionary of Occupational Titles ("DOT"). Level-two reasoning is described in DOT as:

> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

DOT, Appendix C, Section III. Level-one reasoning in the DOT is described as:

18

> Apply commonsense understanding to carry out simple one-
> or two-step instructions.    Deal with standardized
> situations with occasional or no variables in or from
> these situations encountered on the job.

Id.

"'[B]efore an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles, and elicit a reasonable explanation for any discrepancy on this point." Haddock v. Apfel, 196 F.3d 1084, 1087 (10th Cir. 1999).  "[A]n ALJ must address 'an apparent unresolved conflict between [vocational expert] ... evidence and the DOT' before relying on the VE's expert testimony." Johnson v. Commissioner, SSA, 764 Fed.Appx. 754, 761 (10th Cir. 2019)(quoting, SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)). "Apparent" means "seeming real or true, but not necessarily so." Washington v. Commissioner of Social Security, 906 F.3d 1353, 1366 (11th Cir. 2018).  "[I]f a conflict is reasonably ascertainable or evident, the ALJ is required to identify it, ask about it, and resolve it in his opinion." Id.  This duty applies to exertional and non-exertional limitations.  See Hackett v. Barnhart, 395 F.3d 1168, 1175 (10th Cir. 2005).

Here, the ALJ asked the vocational expert if his testimony was consistent with the DOT and the vocational expert answered

"yes." (Tr. 1219-20). The ALJ did not inquire about a possible conflict between the non-exertional RFC and the reasoning level required by the DOT for the jobs listed by the vocational expert, nor was this issue raised by plaintiff's counsel at the administrative hearing.

Defendant argues that there is no inconsistency because the reasoning level in the DOT listings does not describe the specific mental or skill requirements of a particular job. While this argument has some support in unpublished cases defendant cites,[9] the Tenth Circuit did not follow this approach in Hackett, Paulek v. Colvin, 662 Fed.Appx. 588, 594 (10th Cir. 2016) or Pritchett v. Astrue, 220 Fed.Appx. 790, 793 (10th Cir. 2007). Therefore, the court will not accept defendant's argument here.

Defendant also argues that the Tenth Circuit in Hackett indicated that level two reasoning was consistent with "simple and routine work tasks." The issue in Hackett was whether the RFC found by the ALJ was incompatible with jobs requiring a reasoning level of three. The Tenth Circuit answered "no," and stated that "level-two reasoning appears more consistent with Plaintiff's RFC." 395 F.3d at 1176. The court agrees with C.P. v. Saul, 2020

---

[9] Defendant cites Anderson v. Colvin, 514 Fed.Appx. 756, 764 (10th Cir. 2013), Mounts v. Astrue, 479 Fed.Appx. 860, 868 (10th Cir. 2012) and Herriage v. Colvin, 2015 WL 5472496 *2 (D.Kan. 9/16/2015). Defendant also cites Thompson v. Colvin, 551 Fed.Appx. 944, 949 (10th Cir. 2014). Thompson appears to be distinguishable because the court held that the claimant belatedly argued an inconsistency on appeal and the court found that the argument was not supported by the record which included the vocational expert's testimony.

WL 6544582 *7 (D.Kan. 11/6/2020) that this statement regarding level-two reasoning is dicta. In addition, the RFC in this case, unlike Hackett, limited plaintiff to "repetitive tasks involving only simple, work-related decisions with few, if any, workplace changes."

Defendant further cites Stokes v. Astrue, 274 Fed.Appx. 675, 684 (10th Cir. 2008). There, relying on Hackett, the court held that a limitation to "simple, repetitive and routine work" was not inconsistent with reasoning level-two jobs.[10]

Plaintiff cites several cases from this court which have ordered a remand in situations usually involving the question of whether a limitation to work having "simple instructions" is consistent with level-two reasoning. C.P. v. Saul, 2020 WL 6544582 *6-7 (D.Kan. 11/6/2020)(routine, repetitive and unskilled work); Alissia M. v. Saul, 2020 WL 1847745 *10 (D.Kan. 4/13/2020)(simple instructions); Dugan v. Berryhill, 2018 WL 1400448 *5 (D.Kan. 3/20/2018)(simple instructions and work tasks); MacDonald v. Berryhill, 2018 WL 806221 *3-4 (D.Kan. 2/9/2018)(simple work instructions and tasks); Johnson v. Berryhill, 2017 WL 6508944 *9 (D.Kan. 12/20/2017)(simple instructions).[11]

---

[10] It does not appear that the court in Stokes was applying the same DOT definition of level-two reasoning recited in this case. The court described it as "'[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job.'" 274 Fed.Appx. at 684 (citing 2 DOT, App.C, at 1011).

[11] Dugan, MacDonald, and Johnson were opinions from the undersigned judge.

There are contrary holdings in this district (see the discussion of the split in authority in C.P., supra at *6) and in other circuits (see, e.g., Buckwalter v. Acting Commissioner of Social Security, 2021 WL 1940825, ___ F.3d ___ (11th Cir. 5/14/2021); Lawrence v. Saul, 941 F.3d 140 (4th Cir. 2019); Moore v. Astrue, 623 F.3d 599 (8th Cir. 2010)).

Upon due consideration, the court shall order a remand because the court believes a discrepancy is "apparent" between the limitations expressed by the ALJ and the DOT reasoning requirements for the jobs listed by the vocational expert. The RFC in this case limits plaintiff to "simple, routine, repetitive tasks involving only simple, work-related decisions with few, if any, workplace changes." (emphasis added). These restrictions seem more extensive than a limitation to simple instructions or simple, repetitive or routine tasks. The restrictions appear inconsistent with jobs involving level-two reasoning which may require lengthy (not one- or two-step) instructions and dealing with problems involving a few concrete variables in or from standardized situations. The RFC is arguably more consistent with a job involving only, in the language of the DOT describing level-one reasoning, "simple one- or two-step instructions [and d]ealing with standardized situations with occasional or no variables in or from these situations encountered on the job." The court believes this conflict should be reconciled on remand, since the matter was

not addressed in any degree during the vocational expert's testimony.

Because the court will remand this case for further consideration at steps 4 and 5 of the analysis, the court will not reach plaintiff's other arguments pertaining to those portions of the ALJ's decision which follow the RFC determination and whether the vocational expert's testimony provides adequate support for the ALJ's conclusions.

VI. <u>Remand</u>

Plaintiff asks that the court remand this matter for an immediate award of benefits. This is a discretionary matter for decision upon consideration of how long the matter has been pending and whether, given the available evidence, remand for additional fact-finding would serve any useful purpose but would merely delay the receipt of benefits. <u>Salazar v. Barnhart</u>, 468 F.3d 615, 626 (10th Cir. 2006). While the court recognizes that this matter has been pending for a long period of time and that it has been remanded twice (once by the Appeal Council and once by the court upon the parties' agreement), the court shall not remand for an immediate award of benefits. The record does not preordain an award of benefits here and further administrative proceedings may serve a useful purpose. In a case with a similar issue supporting remand, <u>Carolyn J.S. v. Saul</u>, 2019 WL 2523575 *3-4 (D.Kan. 6/19/2019), the court decided not to remand for an immediate award of benefits.

Although this plaintiff's applications have been pending longer, the court still finds that a remand for further proceedings is appropriate.

VII. <u>Conclusion</u>

In conclusion, judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) reversing the Commissioner's decision and remanding the case for further proceedings consistent with this memorandum and order.

**IT IS SO ORDERED.**

Dated this 27th day of May 2021, at Topeka, Kansas.

s/Sam A. Crow
U.S. District Senior Judge